# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND TSCHUDY, individually, on behalf of himself, all others similarly situated, and on behalf of the general public,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>J.C. PENNEY CORPORATION, INC., a Delaware corporation,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 11cv1011 JM (KSC)<br><br>ORDER (1) DENYING MOTION FOR APPROVAL OF CLASS NOTICE; (2) DENYING MOTION TO REQUIRE A TRIAL PLAN; AND (3) DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT |

　　　　Three motions are pending: Plaintiffs' motion for approval of class notice, (Doc. No. 141); J.C. Penney Corporation, Inc.'s ("JCP's") motion to require a trial plan, (Doc. No. 144); and Plaintiffs' motion for partial summary judgment, (Doc. No. 145). The motions were fully briefed and found suitable for resolution without oral argument under Civil Local Rule 7.1.d.1. For the reasons set forth below, all three motions are denied without prejudice, and JCP has 14 days after entry of this order to move to modify or decertify the class.

## BACKGROUND

**A.　The Initial Complaint and Removal**

　　　　Plaintiff Tschudy filed the initial complaint in this action in San Diego Superior Court in April 2011. (Doc. No. 1-1.) Defendants removed the case to this court in May of 2011 pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). (Doc. No. 1.)

**B.     The Operative Complaint**

In February 2012, Tschudy, joined by several other JCP employees (collectively, "Plaintiffs"), filed the operative second amended complaint ("SAC"). (Doc. No. 45.)  Plaintiffs contend that JCP's vacation policy, called My Time Off ("MTO"), causes management associates ("MA") and part-time non-management associates ("PTNMA") to illegally forfeit vacation benefits if they are "not employed on the first day of the calendar month following the month or months during which such paid vacation benefits were earned." (Id. ¶ 74.)  The provisions Plaintiffs challenge (the "challenged provisions") read:

> Management - You become eligible and receive your first deposit on the first day of the third month of employment.
> . . .
> Part-Time Non-Management - You become eligible and receive your first deposit on the first day of the month following 12 months of employment if you average 25 or more hours during the first 48 weeks of employment.  You must qualify each year for MTO deposits.

(Id.)

Plaintiffs assert two causes of action: (1) forfeiture of wages, under California Labor Code § 200 et seq.; and (2) unlawful business practices, under California Business & Professions Code § 17200 et seq.[1]  Specifically, Plaintiffs claim that JCP's MTO violates California Labor Code §§ 201 and 202 (timely payment of wages upon employee's termination or resignation); § 203 (waiting-time penalties for failure to comply with §§ 201 and 202); § 204 (payment of all compensation earned within each pay period); and § 227.3 (prohibition on forfeiture of vested vacation time upon termination); and that these violations also constitute unlawful business practices within the meaning of California Business & Professions Code § 17200 et seq.  Plaintiffs seek damages, statutory penalties, interest, and costs and fees.

---

[1] The SAC also asserted claims under Illinois law, but those claims were transferred to Illinois.  (See Doc. No. 55.)

## C. JCP's Motion for Summary Judgment

In August 2012, JCP filed a motion for summary judgment or summary adjudication. (Doc. No. 59.) JCP asserted that it was entitled to summary judgment because its policy unambiguously advises employees that they are eligible to accrue vacation benefits "only *after* the expiration of their waiting period," and, according to JCP, the policy makes clear that the deposits of vacation time employees receive are advances for future work, rather than compensation for past work. (Doc. No. 59-1 at 10.)[2] JCP relied on language in detailed versions of the policy (referred to here and in previous orders as "JMTOs") that were available only online, and it asserted that all new-hires, including Plaintiffs, had been given access to the JMTO.

Plaintiffs opposed JCP's motion, arguing that summary judgment was inappropriate because they had never received the JMTO, and the only policy documents they had ever been given were shorter versions (referred to here and in previous orders as "EMTOs") that did not indicate that vacation deposits were advances for future work. (Doc. No. 66.)

In January 2013, the court denied JCP's motion for summary judgment, as JCP had not shown that Plaintiffs had received the JMTO, and the documents Plaintiffs had received did not make clear that vacation deposits were advances for future work. (Doc. No. 78.) In a footnote, the court observed:

> However, had JCP established that the Plaintiffs received the JMTOs, the court's analysis might have been different. The JMTO is more extensive, even providing examples about when an employee who started on a given date would begin earning MTO benefits. That additional information might have put PTNM employees on notice about the details of JCP's MTO policy. But the court need not examine that scenario at this juncture as JCP has not shown conclusively that the Plaintiffs received the JMTOs.

(Id. at 12 n.8.)

---

[2] Citations to filings in this case refer to the page number in the original document, rather than the page number assigned by CM/ECF.

**D.     Class-Certification Motions**

In November 2013, JCP moved to strike the class allegations from the SAC. (Doc. No. 93). In June 2014, Plaintiffs moved to certify this case as a class action. (Doc. No. 119.) In December 2014, the court denied JCP's motion and granted Plaintiffs' motion, certifying the class. (Doc. No. 129.)

Three aspects of the certification order form the basis of the present dispute. First, regarding the class definition, the court wrote as follows:

> In their motion for certification, Plaintiffs propose the following class definition:
>
>> Part-Time Non-Management Associates and Management Associates employed in California by JC Penney from April 5, 2007 through the date of trial who, according to JC Penny's records, were not permitted to accrue, or were not paid, all accrued and unused My Time Off.
>
> Although the proposed definition is somewhat inartful, the court construes the proposed class as consisting of those JCP employees who were not permitted to accrue, or who were not paid, vacation benefits pursuant to the challenged provisions in JCP's uniform MTO policy during the proposed class period. Thus construed, the definition is sufficiently ascertainable, as it provides objective criteria for identifying class members.

(Id. at 15–16 (citation and footnote omitted).

As to JCP's argument that Plaintiffs' proposed definition was overbroad because it included those who signed arbitration agreements or releases, the court wrote:

> JCP's fourth and fifth arguments, that the class cannot include those who executed arbitration agreements or signed releases in JCP's favor, are more substantial, given the strong federal policies favoring enforcement of arbitration agreements. But this court has not yet determined whether the arbitration agreement would bar this lawsuit, the present motions are not the proper vehicle for deciding the issue, and JCP offered no evidence of the 4,000 signed releases it refers to. Moreover, other courts to have confronted similar claims have concluded that "the fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification." Avilez v. Pinkerton Gov't Servs., 286 F.R.D 450, 474 (C.D. Cal. 2012); Herrera v. LCS Fin. Servs. Corp., 274 F.R.D. 666, 681 (N.D. Cal. 2011).

1  (Id. at 17.)

2  Finally, regarding the predominance of common issues, the court rejected
3  JCP's central argument that the legality of the MTO hinges on what individual
4  employees know about it:

> [F]undamentally, the question is the same for all putative class members: Does JCP's uniform policy of deferred vesting cause a "forfeiture" within the meaning of the California Labor Code? The answer to that question will not depend upon, for example, whether an otherwise qualified employee was "employed on the first day of the thirteenth month following a twelve-month period of employment, or what each employee believed about the provisions of the policy. Rather, the inquiry will be whether non-entitlement to "accrued" vacation "deposits," predicated upon the challenged provisions of JCP's policy, is illegal.

11  (Id. at 22.)

12  **E.     Subsequent Developments**

13  In March 2015, the Ninth Circuit issued an unpublished order reversing
14  Avilez v. Pinkerton Government Services, 286 F.R.D. 450 (C.D. Cal. 2012), one
15  of the two cases this court cited in support of its decision to defer resolution of the
16  arbitration and class-action waiver issues until after class certification:

> The district court abused its discretion to the extent it certified classes and subclasses that include employees who signed class action waivers. Avilez's arbitration agreement does not contain a class action waiver and counsel did not dispute that those who signed such waivers have potential defenses that Avilez would be unable to argue on their behalf. To the extent the classes and subclasses include individuals who signed class action waivers, Avilez is not an adequate representative, Fed. R. Civ. P. 23(a)(4), and her claim lacks typicality, Fed. R. Civ. P. 23(a)(3).

22  Avilez v. Pinkerton Gov't Servs., Inc., 596 F. App'x 579, 579 (9th Cir. 2015).

23  Later that month, the Northern District of Illinois denied certification of
24  the portion of this case that was transferred to Illinois. See Garcia v. J.C. Penney
25  Corp., Inc., No. 12 C 3687, 2015 WL 1543921 (N.D. Ill. Mar. 31, 2015). The
26  Illinois court concluded that the proposed class definition (the same as the one
27  proposed in this case) was inadequate because it created an impermissible fail-safe
28  class; the end date of the class period was "through the date of trial," which created

ascertainability and class-management problems; and management associates had to be excluded because the named plaintiffs, who had all been part-time non-management associates, had no discernable motivation to litigate on their behalf. Id. at *4–6. The court declined to attempt to formulate a suitable class definition, but allowed the plaintiffs to file a renewed motion that addressed these difficulties. See id. at *9.

**F.   The Present Motions**

　　**1.   Plaintiff's Motion for Approval of Class Notice**

On March 10, 2015, Plaintiffs filed a motion for approval of notice to class members of class certification, noting that JCP had retained new counsel as of mid-February, and the parties had reached an impasse regarding the form and substance of the class notice. (Doc. No. 141.) Plaintiffs request an order (1) approving their version of the proposed class notice; (2) requiring JCP to produce contact information for all class members; (3) requiring JCP to deliver the notice to all currently employed class members with their paychecks or via internal delivery, and to provide a report afterward attesting that delivery was completed; and (4) requiring Plaintiffs' counsel to cause a class administrator to mail the proposed notice to class members who are no longer employed at JCP.

JCP responded on April 6, 2015, contending that the motion is premature because the parties could have worked out their differences if Plaintiffs had been willing, and, regardless, the court's construction of the class definition in the certification order modified the class definition and created an impermissible "fail-safe" class by defining the class to include only those who were harmed by operation of the policy. (Doc. No. 146.) According to JCP, the present class definition makes it impossible to identify class members. It proposes that, rather than intervening, the court should order the parties to meet and confer.

Plaintiffs replied on April 20, 2015, contending that the court's construction of the proposed class definition narrowed, but did not reject, Plaintiffs' proposed

class definition, and the proposed definition did not create an impermissible fail-safe class. (Doc. No. 150.) Alternatively, Plaintiffs proposed three increasingly simplified class definitions that remove reference to the challenged provisions.

### 2. JCP's Motion to Require a Trial Plan

On March 24, 2015, JCP moved to require Plaintiffs to submit a trial plan. (Doc. No. 144.) In the motion, JCP contends that this case cannot be tried as a class action because the present class definition is so defective that it is not possible to identify class members; many potential class members have signed arbitration agreements with class-action waivers and must be excluded from the class; and Plaintiffs have an obligation to demonstrate how this case can be tried as a class action without depriving JCP of an affirmative defense it is entitled to—that some class members knew about the more detailed terms of the JMTO, which undercuts their claims.

Plaintiffs opposed the motion on April 13, 2015, countering that the Ninth Circuit and Federal Rule of Civil Procedure 23 do not require a trial plan; a trial plan is unnecessary in this case because their claims will be determined under California law based on a uniform policy and information from JCP's employment database; and, regardless, a demand for a trial plan is premature. (Doc. No. 148.) Moreover, Plaintiffs argue, JCP's arbitration agreement and class-action waiver prohibit only bringing a class action, not participating in one; do not apply to welfare-benefit plans like the MTO; are ineffective against PAGA claims under recent California law, and, regardless, the agreement is not properly before this court at this stage.

JCP replied on April 20, 2015. (Doc. No. 152.) JCP renewed its prior arguments and, additionally, argued in a footnote that the class must also exclude current employees, since California Labor Code § 227.3 applies only after an employee is terminated. Attached to the reply were declarations and copies of the arbitration agreement. (Doc. Nos. 152-1 to 152-4.)

### 3. Plaintiffs' Motion for Partial Summary Judgment

On March 25, 2015, Plaintiffs moved for partial summary judgment on the merits of their claims, leaving only the remedies for later. (Doc. No. 145.) They also requested judicial notice of a portion of the California Department of Labor Standards Enforcement ("DLSE") Manual, an advisory opinion letter by the DLSE, and an unpublished order from Illinois. (Doc. No. 145-2.)

JCP opposed the motion on April 13, 2015, contending, among other things, that the court cannot rule on Plaintiff's motion for summary judgment before class membership has been finalized and the class has been notified because doing so would allow "one-way intervention," as JCP would be bound but class members could decide whether to opt in or out depending on the outcome. (Doc. No. 149).

Plaintiffs replied on April 20, 2015, arguing that JCP waived any objection to the present motion by moving for summary judgment before the class was certified. (Doc. No. 151.) Plaintiffs submitted additional evidence, including several items designated as "Reply Declarations," and an attachment objecting to JCP's evidence and moving to strike some of the statements on the grounds that they are irrelevant, not credible, or may have been obtained in violation of the Rules of Professional Conduct. (Doc. No. 151-6.)

On April 27, 2015, JCP responded to Plaintiffs' evidentiary objections and notice to strike, contending that they lack merit and were filed in violation of the Local Rules. (Doc. No. 153.)

### G. Further Briefing

On July 13, 2015, after preliminary review of the filings, the court requested further briefing on how to proceed. (Doc. No. 163.) The court noted that the present motions are incompatible and asked the parties to propose when and how the arbitration and class-action waiver issues should be addressed and whether any prejudice will result if Plaintiffs' motions are postponed until any remaining class-definition issues have been resolved.

1    The parties responded on August 5, 2015.  JCP argued that Plaintiffs' motions must be postponed until after any class issues have been resolved, it presented still more arguments regarding the inadequacy of the class, and it posited that no prejudice will result from delaying Plaintiff's motions.  (Doc. No. 166.) Plaintiffs contend that the court should rule on their motions now; that JCP waived its arbitration and waiver defenses by litigating this case to this stage; that those defenses have still not been properly raised and can be addressed in the notice to class members; and that class members will be prejudiced by any further delay because the prompt payment of wages is a fundamental policy in California, and Plaintiffs will incur unnecessary time and expense.  (Doc. No. 167.)  Both parties replied on August 12, 2015.  (Doc. Nos. 169–70.)

## DISCUSSION

As noted, there are several difficulties with the present motions.  JCP's new counsel is attempting to relitigate class certification, contending, in essence, that no progress is possible until the court revisits the certification decision.  Many of its present arguments could have been, but were not, raised at class certification or in an appropriate post-certification motion or appeal.  Meanwhile, Plaintiffs seek to notify the class of class certification, they propose various methods of correcting some of the difficulties JCP raises, including by redefining the class, and they contend that they are entitled to judgment on the merits of their claims before the class has been notified.

The court has several options at this point.  Plaintiffs propose forging ahead and notifying class members that a class has been certified but may be modified going forward.  However, JCP's new arguments raise some serious concerns about the manageability of the present class definition and whether perhaps large portions of the class must be culled before notice is sent.  Plaintiffs essentially concede that the class definition could benefit from refinement, as they propose various modifications, including removing references to the challenged provisions or

terminating the class period as of the date of class certification, as opposed to the date of trial.

Any further delay in this case is regrettable, but notifying the class before class issues are settled is likely to result in unnecessary costs and "may result in multiple notices and thus create confusion for potential class members." Gomez v. Rossi Concrete Inc., No. 08cv1442 BTM (CAB), 2011 WL 666888, at *2 (S.D. Cal. 2011). While the notice required by Federal Rule of Civil Procedure 23(c)(2) should be provided "as soon as practicable after the court determines that the class action is proper," courts may postpone notice "if there is a reason for the delay and it would not prejudice those class members who are not before the court." 7AA Wright et al., Federal Practice and Procedure § 1788 (3d ed.); see also Rubenstein, Newberg on Class Actions § 8:11 (5th ed.). Here, there is reason for delaying notice until the class-definition issues are resolved, and Plaintiffs did not identify any concrete prejudice that will result if notice is delayed. Hence, Plaintiffs' motion for approval of class notice is denied for now, and may be re-filed once the remaining class-definition issues are resolved.

Plaintiffs also propose that the court should rule on their motion for partial summary judgment before the class has been notified. They contend that it would be unfair to deny them an opportunity for a ruling on the merits at this stage, since JCP moved for summary judgment before the class was certified. They observe that "courts have expressly held that a defendant may waive the protections Rule 23(c) offers and elect to have the merits decided before the class certification question and before notice is sent to the class." Postow v. OBA Fed. Sav. & Loan Ass'n, 627 F.2d 1370, 1382 (D.C. Cir. 1980). They rely on two cases where district courts found it appropriate to rule on cross-motions for summary judgment before class notice was sent. See Wooten v. Hamilton Cnty., 94 F.R.D. 176, 177 (S.D. Ohio 1982); Haas v. Pittsburg Nat'l Bank, 381 F. Supp. 801, 806 (W.D. Pa. 1974). Additionally, Plaintiffs propose that any risk of prejudice to JCP can be minimized

by not informing class members of the outcome of the motion, as the court did in Postow. See 627 F.2d at 1397 & n.30.

There are several difficulties with this proposal. First, as JCP points out, ruling on Plaintiffs' motion at this point would risk "'one-way intervention'—that is, the intervention of a plaintiff in a class action after an adjudication favoring the class had taken place." Schwarzchild v. Tse, 69 F.3d 293, 295 (9th Cir. 1995). Doing so would risk prejudicing JCP because any decision would be binding on JCP, but would not be binding on potential class members before they have had notice and an opportunity to opt out. See id. The California Supreme Court has colorfully analogized this scenario to "being pecked to death by ducks. One plaintiff could sue and lose; another could sue and lose; and another and another until one finally prevailed; then everyone else would ride on that single success." Fireside Bank v. Superior Court, 40 Cal. 4th 1069, 1078 (2007) (internal quotation marks omitted). Rule 23(c)(2)'s notice requirement was designed specifically to protect defendants from this risk. See Schwarzchild, 69 F.3d at 295–96. Although not informing the class of a ruling on the merits might have been effective to reduce the risk of prejudice in 1980, when Postow was decided, it is doubtful that doing so would be effective now, when the public can readily access court documents on the Internet.

Plaintiffs are correct that a defendant can waive the right to compel the plaintiff to notify the class of a pending action by moving for summary judgment before the class has been certified and notice has been sent. See Schwarzchild, 69 F.3d at 297. A defendant who takes this approach assumes the risk that judgment in its favor will not protect it from subsequent suits by other potential class members. See id. Certainly, Plaintiffs' cases reflect that some courts have ruled on a plaintiff's motion for summary judgment before notifying the class, when the defendant has also moved for summary judgment.

///

However, Plaintiffs' cases do not indicate that doing so is either preferred or required. The court in <u>Postow</u> noted the "complicated sequence of events" and "equitable reasons" for allowing post-judgment certification, 627 F.2d at 1397–98, and it limited its holding to the facts of the case, <u>see id.</u> at 1395. The courts in <u>Wooten</u> and <u>Haas</u> both contemplated that ruling on cross-motions for summary judgment would make further litigation unnecessary. <u>See</u> <u>Wooten</u>, 94 F.R.D. at 177 ("[T]he Court should not be required to refrain from considering the merits of a nominal class action until class certification and notice to the class have been accomplished, merely for the sake of form . . . ."); <u>Haas</u>, 381 F. Supp. at 806 ("[T]he court should not be required to engage in vain and useless effort merely for the sake of form."). And, closer to home, courts have postponed ruling on a plaintiff's pre-notification motion for summary judgment, <u>see</u> <u>Gomez</u>, 2011 WL 666888, at *2, even when the defendant also had a motion for summary judgment pending, <u>see</u> <u>Weir v. Joly</u>, No. CV-10-898-HZ, 2011 WL 6043024, at *2 (D. Or. Dec. 2, 2011) ("I find that the one-way intervention doctrine has not been waived by defendants.").

In this case, ruling on Plaintiffs' motion for partial summary judgment, regardless of the outcome, would not end this litigation, and Plaintiffs did not identify any concrete prejudice they or absent class members will suffer if a ruling on their motion is delayed. Because ruling on Plaintiffs' motion now may prejudice JCP and result in further complications for the class litigation, Plaintiffs' motion for partial summary judgment, and their related request for judicial notice and improperly noticed motion to strike, are denied without prejudice. Plaintiffs may re-file their motions once the class has been notified and had an opportunity to opt out.[3]

---

[3] Plaintiffs propose holding their motion in abeyance if it is not resolved now. However, in the court's experience, the better practice is to deny a motion without prejudice so that any renewed motion will reflect the current state of the case.

Last, JCP proposes that Plaintiffs should be required to prepare a trial plan showing that this case can be litigated as a class action. However, JCP did not mention the need for a trial plan at class certification, and the Federal Rules and the Ninth Circuit do not require one. See Chamberlan v. Ford Motor Co., 402 F.3d 952, 961 n.4 (9th Cir. 2005) ("Nothing in the Advisory Committee Notes suggests grafting a requirement for a trial plan onto the rule."). Moreover, if Plaintiffs were to produce a trial plan, the likely result would be more delay as JCP attempted to challenge its sufficiency. Accordingly, JCP's motion for a trial plan is also denied.

The question at this point is how to get this case back on track. One option might be for the court to attempt to redefine or narrow the class now. However, JCP's challenges to the class certification are scattered throughout its filings, including in footnotes, replies, and supplemental filings, without having been properly raised or fully briefed. Working with such a scattered record and incomplete briefing would require the court to take on an improper role and is unlikely to result in a definition that satisfies either side. This option also appears likely to result in further delay.

In the court's view, the best course of action at this point is to squarely revisit the class certification and resolve any objections JCP can properly raise at this point. Accordingly, if JCP wishes to challenge the class certification, it must file a proper motion for modification or decertification within 14 days after entry of this order and explain why the relevant standards are not met. Plaintiffs will then have 10 days from the date of JCP's filing to respond. No reply papers will be accepted. All relevant arguments and evidence should be presented clearly and cogently in each party's brief. The motion is set to be heard on ***October 12, 2015, at 10:00 a.m.*** However, in light of this direction, several observations are in order.

First, some of JCP's objections to the class definition appear to be easily resolved. For example, Plaintiffs propose ending the class period on the date of

class certification rather than on the date of trial. Others appear to be more semantic than substantive, as both parties suggest that the purported fail-safe problem could be avoided by defining the class as all employees who were subject to the MTO during the class period. Alternatively, the class might be limited to those who were subject to the MTO policy but who did not receive MTO deposits under its terms at any point during the class period. To be clear about what terms are at issue, the definition could be preceded by the terms quoted on the second page of this order. Such a definition does not depend upon the legality of the terms and should allow JCP to identify class members (and allow class members to identify themselves) as those who did not receive MTO during the class period because they were ineligible under its terms. If such a definition is impracticable, JCP should demonstrate why.

Second, JCP appears to be correct that, because Plaintiffs did not sign the arbitration agreements, which contain class-action waivers, they are not typical or adequate to represent employees who signed the agreements. See Avilez v. Pinkerton Gov't Servs., Inc., 596 F. App'x 579, 579 (9th Cir. 2015). Given the parties' briefing on the viability of PAGA waivers, it appears that those who signed the agreements may "have potential defenses that [Plaintiffs] would be unable to argue on their behalf." Id. Plaintiffs propose that JCP has not properly raised these defenses and waived them by not asserting them sooner. However, it is not clear how JCP could have raised these defenses before class certification when Plaintiffs did not sign the agreements themselves.[4] If Plaintiffs wish to keep those who signed the agreements in the class, they should provide the court with legal authority that plainly supports their position.

Third, although JCP persists in contending that it has a right to defend on the basis that some employees knew about the more detailed terms of the JMTO, it is unclear how employees' personal beliefs about the policy are relevant, when

---

[4] The court notes that this fact does not appear to have been presented at class certification.

JCP does not dispute that the operative terms were the same across all versions and the policy was uniformly implemented according to its terms. The question, as the court understands it, is whether a policy that operates as the MTO does is legal, which does not appear to hinge on what employees knew about it. If JCP wishes to proceed on this basis, it must provide a clear legal basis for this defense. The dictum in the footnote in the court's order denying JCP's motion for summary judgment will not suffice.

Finally, the court is aware that JCP has other objections, and Plaintiffs must feel, justifiably, that JCP should not have a second bite at the apple. These objections should also be properly raised, cogently briefed, and supported by law. Hopefully, this course of action will clear the blockages that have obstructed the orderly resolution of this case. If either party believes that an issue affecting the class definition must be addressed in some other fashion, such as in a motion for summary judgment after the class has been notified, that objection should be clearly noted and accompanied by a proposal of how the class can be identified and notified before the issue is resolved.

## CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Plaintiffs' motion for approval of class notice, (Doc. No. 141), is DENIED without prejudice. Plaintiffs may re-file the motion after JCP's anticipated motion challenging the class certification is resolved.

2. JCP's motion for a trial plan, (Doc. No. 144), is DENIED, in lieu of the anticipated motion to modify or decertify the class, which must be filed within 14 days after entry of this order. Plaintiffs' response, if any, will be due within 10 days after JCP files the anticipated motion. No reply filings will be accepted. The motion is set to be heard on ***Monday, October 12, 2015, at 10:00 a.m.***

///

///

3.  Plaintiffs' motion for partial summary judgment, (Doc. No. 145), is DENIED without prejudice. Plaintiffs may re-file the motion once the class has been notified and has had an opportunity to opt out.

IT IS SO ORDERED.

DATED: August 28, 2015

_____
Hon. Jeffrey T. Miller
United States District Judge