UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND TSCHUDY, individually, on behalf of himself, all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. 11cv1011 JM (KSC)<br><br>ORDER GRANTING MOTION TO DECERTIFY CLASS; SCHEDULING STATUS CONFERENCE |

Pending before the court is J. C. Penney Corporation, Inc.'s ("JCP's") Motion to Decertify the Class or, in the alternative, to Modify the Class Definition ("Motion"). Plaintiffs oppose the Motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented suitable for resolution without oral argument. Having carefully considered the court record, appropriate legal authorities and, for the reasons set forth below, the court grants the motion to decertify the class and sets a status conference for December 15, 2015 at 1:30 p.m. in Courtroom 5D.

### BACKGROUND

The Court incorporates the following court orders as if fully set forth herein: January 28, 2013 Order Denying Motion for Summary Judgment, (Ct. Dkt. 78); December 17, 2014 Order Denying Motion to Strike Class Allegations, (Ct. Dkt. 129);

and August 28, 2015 Order Denying Motion for Approval of Class Notice. (Ct. Dkt. 171).

## THE MOTION TO DECERTIFY THE CLASS

**Introduction**

The present Motion arises in context of the parties having largely completed both fact and expert discovery. The parties have narrowed the issues and submitted evidentiary materials in support of, and in opposition to, JCP's motion for partial summary judgment and class certification related motions. In light of manageability and efficiency concerns identified below, the court narrows the scope of Plaintiffs' Class claims.

**The Named Plaintiffs**

Raymond Tschudy, Sheila Walker, Leticia Hinojosa and Kamryn Candelaria (collectively "Named Plaintiffs") are the proposed class representatives and former Part-Time Non-Management Associates ("PTNMA") of JCP. Tschudy was employed by JCP from February 11, 2007 to February 28, 2008, and, during his first 48 weeks of employment, averaged about 30.3 hours of work per week and during the entire 53 weeks of employment averaged about 30.7 hours of work per week. Walker was employed by JCP from September 17, 2008 through April 2010. Walker took a medical leave in October 2009 and never returned to work. During the first 48 weeks of employment, Walker averaged about 24.15 hours per week and worked 1,378.17 hours during her entire tenure with JCP. Hinojosa worked from October 29, 2006 until March 3, 2011. Candelaria commenced work in July 2007 and terminated her employment with JCP in May or June 2012. During her first year of employment with JCP, she worked 1,221 hours.

The Named Plaintiffs allege that Cal. Labor Code §227.3 requires that all part time and full-time JCP employees receive a pro rata share of their vacation benefit when, for whatever reason, their employment with JCP terminates. Named Plaintiffs assert that JCP's My Time Off Policy ("MTO Policy") violates Labor Code §227.3 and

operates as an impermissible forfeiture of accrued vacation benefits.

**Labor Code §227.3**

Labor Code §227.3 provides:

§ 227.3. Vested vacation wages; payment upon termination

Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.

As set forth by the parties, and various orders of this court, a California employee has no entitlement to vacation benefits. However, when the employer does offer a vacation benefit to its employees, vacation pay "vests" when it is earned and, upon the employees's termination of employment, "all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served." Labor Code §227.3; Suastez v. Plastic Dress-Up Co., 31 Cal.3d 774, 781 (1982). By clarifying that vacation benefits "vest" when earned, an employer, like Dress-Up Co., could not impose anniversary dates to prevent vacation time from vesting. Id. Upon termination, an employee must be paid the pro rata share of vested vacation benefits.

Under the Labor Code, the employer retains the right to set the basic parameters of vacation benefits. The amount "of vacation pay an employee is entitled to be paid as wages is to be determined with reference to the employer's policy." Id. at 783. Such benefits include determining the amount of vacation days and a waiting period to qualify for vacation benefits.

Finally, the court highlights that the California Legislature instructs those involved in administrative disputes about vesting of vacation benefits to "apply the principles of equity and fairness." Labor Code §227.3. Further, as noted in Suastez,

"[e]ven before the enactment of section 227.3, California Courts had applied the principles of equity and fairness to allow laid-off employees to recover pro rata vacation benefits under certain circumstances." 31 Cal.3d at 783. Thus, principles of equity and fairness provide context in which to view claims under §227.3.

**The Class Definition**

After briefing the issue of class certification, Plaintiffs propose the following Class definition:

> Part-Time Non-Management Associates and Management Associates employed in California by JC Penney from April 5, 2007 through December 17, 2014, the date this class was certified, who did not receive My Time OFF deposits at any time during this period.

In Wal–Mart Stores, Inc. v. Dukes, the Supreme Court held that, in order to satisfy commonality, a plaintiff's claims "must depend on a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). Plaintiffs' central contention in this case is whether part-time workers under the MTO Policy are entitled to vacation benefits.

> "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

Id.

As noted by the parties, and in previous orders of this court, Plaintiffs bear the burden to show that the prerequisites for class action treatment are satisfied. This requires the court to perform a "rigorous analysis," which frequently requires the court to analyze the merits of Plaintiffs' claims. Id. 2552 ("the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action").

//

**Discussion**

The court concludes that the present Class definition is unworkable and not subject to class-wide resolution for several reasons.

<u>The MA and PTNMA Vacation Plans</u>

The Class defines two disparate groups of employees: Management Associates ("MAs") and PTNMAs. MAs are subject to a different vacation benefits package then PTNMAs. MAs are full-time employees who do not have to satisfy a minimum average hours requirement. MAs receive monthly deposits into their vacation benefits account. When MAs terminate their employment with JCP for whatever reason, the employee receives the pro rata share of unused vacation benefits. The waiting period for MAs varies between 29 and 63 days, depending on the date of hire. MAs begin receiving vacation benefits on the first day of the third month after they commenced employment with JCP. Under the circumstances, the waiting period is one of the paramaters to be established by the employer's vacation benefit policies. <u>See</u> <u>Owen v. Macy's Inc.</u>, 175 Cal.App. 4th 462 (2009); D.L.S.E. Enforcement Policies and Interpretations Manual, Sections 15.1.2 and 15.1.3 ("Vacation plans which establish probation periods during which no vacation pay is vested are permitted. If the employer has not promised vacation pay during a probation period, no pro rata portion is due the employee whether or not he or she passes probation."). The court preliminarily concludes, based upon the undisputed evidentiary record, that this brief waiting period is likely one that is solely "determined by the company policy, and that amount depends on 'the length of employment with the company and the title or position the employee holds." <u>Owen</u>, 175 Cal.App.4th at 470 (citations omitted).

In contrast to MAs, the Named Plaintiffs are all PTNMAs. They participate in a different vacation benefits plan with a different waiting period and additional terms. Participants in this plan are subject to a 12 month waiting period before accruing vacation benefits and must work a minimum amount of hours to qualify for this plan. Upon completion of the waiting period, the employee, on the first day of the following

1  month, receives an advance vacation deposit for services rendered in the upcoming
2  month. (Harris Decl. ¶15, Exhs. E-F).
3      The court concludes that the claims of the MAs and PTNMAs fail to satisfy the
4  typicality and adequacy requirements of Fed.R.Civ.P. 23(a)(3) and (4). Named
5  Plaintiffs are participants in the PTNMA plan, and not the MA plan. A class
6  representative "must be part of the class and possess the same interest and suffer the
7  same injury as the class members." General Telephone Co. v. Falcon, 457 U.S. 147
8  (1982). Named Plaintiffs' injuries arise from the PTNMA vacation plan. Named
9  Plaintiffs may prevail on their claims without any reference to the MA plan.
10 "[T]ypicality insists that the class representative be a member of the class and have
11 claims similar to those of other class members, and the requirement rests upon the
12 belief that such a representative, pursuing her own interests, will pursue the class's as
13 well." Newberg on Class Actions § 3:28 (5th ed.2011). Here, Named Plaintiffs do not
14 need to present any evidence regarding the MA plan to prevail on their claims. While
15 Named Plaintiffs argue that they will vigorously pursue the claims on behalf of the
16 MAs, there is no incentive for Named Plaintiffs to do so.
17     In sum, MAs are improperly included in the class definition.
18     <u>Current Employees as Class Members</u>
19     Named Plaintiffs' central allegation is that JCP violated Labor Code §227.3 by
20 not paying them for unused vacation time at the time they terminated their employment
21 with JCP. See Cal. Labor Code §227.3 (Upon termination an employee's vested
22 vacation benefits must be paid to the employee as wages.). As current JCP employees
23 do not have a present claim for violation of §227.3, they must be excluded from the
24 class.
25     This court previously ruled that Named Plaintiffs, as former employees, do not
26 possess standing to seek injunctive relief on behalf of current JCP employees. (Ct. Dkt.
27 129 at p.12). "Section 227.3, by its express terms, applies only to the situation where
28 an employee is terminated without having taken off his or her vested vacation time."

Bell v. H. F. Cox, Inc., 209 Cal.App. 4th 62, 75 (2012). "Under Labor Code Section 227.3, an employee has the right to be paid for unused vacation only after the 'employee is terminated. . . .'" Church v. Jamison, 143 Cal.Ap. 4th 1568, 1576 (2006). That is because "termination of employment is the event that converts the employer's obligation to allow an employee to take vacation from work into the monetary obligation to pay that employee for unused vested vacation time." Id. As no current JCP employee has a claim for unused or unpaid vacation under §227.3, they are not proper class members. Named Plaintiffs' claims are not typical of those of current JCP employees.

In sum, current JCP employees must be excluded from the class.

<u>Current and Former Employees with Arbitration Agreements</u>

JCP identifies that all PTNMAs employed after July 17, 2009, are subject to the Rules of Arbitration as part of the employment relationship. (Doc. 166). Named Plaintiffs are not subject to the arbitration agreement. Putative class members with arbitration provisions likely cannot be included in the class because they are uniquely subject to having their disputes resolved in a non-judicial forum. This results in the Named Plaintiffs failure to satisfy the typicality and adequacy requirements of Fed.R.Civ.P 23(a)(3) and (a)(4). See Avilez v. Pinkerton Gov't Servs., Inc., 596 F. App'x 579, 579 (9th Cir. 2015) (named plaintiffs who did not sign class waivers are atypical and inadequate representatives to represent those who did sign class waivers).[1]

In sum, those PTNMAs with arbitration provisions are excluded from the class.[2]

---

[1] In its Order Granting Class Certification, the court relied upon the district court's opinion in Avilez v. Pinkerton Gov't Servs., Inc., 286 F.R.D. 450, 473-74 (C.D. Cal. 2012) in concluding that the Named Plaintiffs were adequate to represent and possessed typical claims to those of putative class member with arbitration provisions. The Ninth Circuit specifically reversed that portion of the Avilez opinion relied upon by this court in its class certification order.

[2] On November 6, 2015, Plaintiffs' counsel filed a related action, Knatt v. J. C. Penney Corp. Inc., 15cv2516 JM(KSC). That action seeks to assert the same class claims as Plaintiffs in the present action. The court notes that the Named Plaintiffs in Knatt appear to be former PTNMAs of JCP who signed arbitration agreements as part of their employment relationship.

A Merits Review

The present matter arises in context of substantial evidentiary showings by both parties. This case is over four and one-half years old and the parties have completed all fact discovery and filed substantive motions. As trial approaches, the above analysis identifies that the Class Definition is overbroad as currently pleaded. Although not previously discussed, the court notes that the class, as defined, consists of those PTNMAs "who did not receive My Time OFF deposits" during the Class Period. For the reasons set forth below, the court concludes that this class definition is overly broad and ambiguous.

The court is required to conduct a "rigorous analysis" to determine whether this case proceeds to trial as a class or individual action. In this case, it is "necessary for the court to probe behind the pleadings before coming to rest on the certification issue." Dukes, 131 S.Ct. at 2551 (quoting General Tel Co. v. Falcon 457 U.S. 147, 160 (1982)). Here, a merits based review is required to assist the court and parties in analyzing whether the prerequisites to class certification are satisfied and to narrow the issues for trial.

The Claims

Plaintiffs' claims have several parts. The first two concern the so-called "waiting period." In essence, Plaintiffs argue that the uniform MTO Policy violates California law "because pursuant to its express terms, and/or as implemented, it attempts to control the time of vesting of vacation benefits and results in the forfeiture of vested accrued vacation pay." (Ct. Dkt. 66, 9:14-16, Oppo. to MSJ). Plaintiff Tschudy's claim reflects this argument. Tschudy was employed by JCP from February 11, 2007 to February 28, 2008, and, during his first 48 weeks of employment, averaged about 30.3 hours per week and during the entire 53 weeks of employment averaged about 30.7 hours per week. It is undisputed that had Plaintiff worked until March 1, 2008, he would have received a MTO benefit, considered by JCP as an advance for vacation benefits earned during the month of March 2008.

In the January 29, 2013 Order on the motion for summary judgment, Plaintiffs focused on the different iterations or portions of the MTO Policy provided to Plaintiffs. However, on the present motion, Plaintiffs repeatedly argue that all Plaintiffs were subject "to the same MTO Policy and were denied MTO benefits as a result of the unlawful vesting conditions in that policy."[3] (Oppo. at p.8:4-5). The court notes that the MTO Policy consists of the written policy as well as the company's application of what Plaintiffs describe as a uniform policy. The Harris declaration identifies the uniform application of the MTO policy to PTNMAs. The court notes that Plaintiffs have not submitted any evidence to the contrary.

As this is a motion to decertify, the court finds this motion to be an inappropriate procedural vehicle to rule, as a matter of law, that the MTO Policy results in either a permissible or an impermissible forfeiture of vacation benefits. Assuming for the moment that vacation benefits do not vest until a PTNMA works the requisite hours and is employed on the first of the month following the employee's one year anniversary, the court still cannot conclude that Plaintiff Tschudy does not have a personal claim. California has a long history of protecting employees from abusive employment policies. See Suastez, 31 Cal.3d at 783. The statute itself reflects the policy that principles of equity and fairness should be applied to effectuate this fundamental state policy.

Applying principles of fairness and equity, and subject to further briefing by the parties, Plaintiff Tschudy may well have a compelling case for vacation benefits even

---

[3] In other words, Plaintiffs' claims do not depend on the actual MTO related documents received or reviewed by Plaintiffs. The court notes that this is not a misrepresentation case but one dependent on the uniform policies actually implemented by JCP. Based upon the evidentiary record submitted by the parties, the court considers the MTO policy to consist of the Harris Declarations and referenced exhibits. Moreover, class misrepresentation claims based upon what each individual class member was told, or based upon documents received, reviewed, or made available to the employee, would raise manageability concerns about individualized determinations. Lastly, the court notes that it could not locate in the evidentiary record whether the benefits received by Named Plaintiffs Walker, Hinojosa, and Candelaria complied with the policy as established in the Harris Declaration and attached exhibits.

though he did not technically comply with the waiting period by working until the first of the month. Tschudy worked about 53 weeks for an average of 30.7 hours per week and he was one day short of being employed on the first day of the month after his one year anniversary date. Had Tschudy been employed on March 1, 2008, he would have accrued about 6.7 hours for March (30.7 hrs. per week X 2.6 weeks per year ÷ 12 months per year). (Harris Decl. ¶¶7 - 17, Exhs. E, F). The court notes the apparent compelling nature of Plaintiff Tschudy's individual case, regardless of whether the one year eligibility period is considered a valid or invalid "waiting period," and highlights that application of principles of fairness and equity is necessarily an individualized determination, not appropriate for resolution on a class-wide basis.[4]

Second, Plaintiffs broader "waiting period" claim is that all PTNMAs are entitled, upon termination of their employment, to be compensated as if vacation benefits accrued from the initial date of hire, without regard to a purported "waiting period." Again, assuming the validity of this portion of the MTO policy, Plaintiffs' broader claim would fail and the Class would loose the majority of its members. Conversely, assuming the period is not a valid "waiting period," vacation benefits would vest as earned throughout the employee's term of employment.

Third, with respect to Named Plaintiffs Walker, Hinojosa, and Candelaria, they claim that the MTO Policy is based upon past performance and does not always reflect present circumstances. These Plaintiffs declare that the hours they worked on a weekly basis varied from week to week. Since the vacation benefits are based on past performance, the amount of compensable hours is likely larger or smaller than the hours actually worked. The Named Plaintiffs declare that JCP never performed a reconciliation of the amount of MTO deposits to accurately reflect that the benefits

---

[4] The court notes that Plaintiff Tschudy's pursuit of a personal claim, based upon unique equitable considerations, may render his claims atypical to those of the Class. The court also notes that it is unclear whether Tschudy is pursing a personal claim based upon principles of equity or whether his is a facial attack to the Policy on behalf of the Class.

received corresponded to the year in which such benefits were paid. The court notes that Plaintiffs have not submitted any evidence to show that the failure to reconcile the amount of MTO benefits caused Plaintiffs any actual harm, a necessary showing to prevail on their claims, or that this claim is encompassed within Labor Code §227.3.

Finally, a merits review reveals that the central descriptor in the Class definition is misleading, unworkable, and ambiguous. Plaintiffs allege that the Class consists of those "who did not receive My Time OFF deposits at any time during this period." By definition, Plaintiffs Walker, Hinojosa, and Candelaria may not be appropriate class members as they received MTO benefits during the class period. As presently defined, the prerequisites for class certification are not satisfied.

In sum, the class definition is unworkable. The court has briefly reviewed the merits of Plaintiffs' claims in order to focus on issues related to class certification, and not to make merits-based determinations. This review reveals that the Class as presently identified is overbroad in that it encompasses putative plaintiffs who are outliers to the class: current employees, MAs, and employees with arbitration provisions. Further, the class is so ambiguously defined that three of the four Named Plaintiffs do not appear to be class members because they received MTO deposits during the class period (the Class is defined to consist of those employees who did not receive any vacation benefits "during the class period."). The analysis also reveals that members of the class who worked the requisite number of hours, assuming the validity of the "waiting period," but did not comply with the one year employment condition to work until the first of the following month, will have unique claims requiring the application of principles of equity and fairness to resolve their claims. The uniqueness of this claim, requiring an analysis of each employee's potential claims and applying equitable principles, renders the claim inappropriate for class action treatment.

<u>The Remedy</u>

This case is over four and one half years old, discovery is complete, and Plaintiffs have yet to identify a coherent class that complies with Fed.R.Civ.P. 23. The

parties and court are instructed to determine class certification issues at "an early practicable time." Fed.R.Civ.P. 23(c)(1)(A). Plaintiffs have the burden to define the "class and the class claims," Fed.R.Civ.P. 23(c)(1)(B), and Plaintiffs have simply not met their burden. At this late point in the case, the court is reluctant to grant Plaintiffs leave to file an amended Class definition without discussing the issue with the parties. The court sets a status conference for ***December 15, 2015 at 1:30 p.m.*** The parties should be prepared to discuss the following:

    1) Amending the class definition;

    2) Whether, in light of the undisputed evidence that JCP uniformly applies its MTO Policy, summary adjudication is appropriate to determine whether JCP's so-called "waiting period" complies with California law; and

    3) Setting revised pretrial conference and trial dates.

By 12:00 noon on December 14, 2015, the parties may submit briefing responsive to the court's inquiries.

    In sum, the court grants the motion to decertify the class and sets a status conference for ***December 15, 2015 at 1:30 p.m.***

    **IT IS SO ORDERED.**

DATED: December 9, 2015

                                              Hon. Jeffrey T. Miller
                                              United States District Judge

cc:       All parties