UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND TSCHUDY; SHEILA WALKER; and KAMRYN CANDELARIA,<br><br>Plaintiffs,<br><br>v.<br><br>J.C. PENNEY CORPORATION INC., a Delaware corporation,<br><br>Defendant. | CASE NO. 11cv1011 JM (KSC)<br><br>ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFFS; SCHEDULING ORDER |

Defendant J. C. Penney Corporation, Inc. ("JCP") and Plaintiffs Raymond Tschudy, Sheila Walker, and Kamryn Candelaria cross-move for partial summary judgment on whether JCP's My Time Off vacation policy ("MTO Policy") complies with Cal. Labor Code §227.3. The motions are opposed. Having carefully considered the court record, appropriate legal authorities, oral arguments of counsel and, for the reasons set forth below, the court concludes that the MTO Policy, relating to the 12 month waiting period and minimum hours of employment requirements, does not violate Cal. Labor Code §227.3. The court also sets a case management conference for April 25, 2016 at 9:30 a.m.

/ /

/ /

# BACKGROUND

The court notes that the evidentiary submissions and legal arguments of the parties have been repeatedly addressed by the court. Rather than repeat the earlier submissions, the Court incorporates the following court orders as if fully set forth herein: January 28, 2013 Order Denying Motion for Summary Judgment, (ECF 78); December 17, 2014 Order Denying Motion to Strike Class Allegations, (ECF 129); August 28, 2015 Order Denying Motion for Approval of Class Notice, (ECF 171); and December 9, 2015 Order Granting Motion to Decertify. (ECF 183).

## THE MOTION FOR SUMMARY JUDGMENT

**Introduction**

The issue addressed in this Order is whether the vesting provisions of the MTO Policy violate Cal. Labor Code §227.3. While the court partially answers this question in the negative, the court notes that this ruling is a very narrow one. The court specifically concludes that the initial 12 month waiting period before MTO vacation benefits begin to accrue or vest, and satisfaction of the minimum number hours or service requirement, do not violate Cal. Labor Code §227.3.

**The Named Plaintiffs**

Raymond Tschudy, Sheila Walker, and Kamryn Candelaria (collectively "Plaintiffs") are former Part-Time Non-Management Associates ("PTNMA") of JCP. Tschudy was employed by JCP from February 11, 2007 to February 28, 2008, and, during his first 48 weeks of employment, averaged about 30.3 hours of work per week and during the entire 53 weeks of employment averaged about 30.7 hours of work per week. Walker was employed by JCP from September 17, 2008 through April 2010. Walker took a medical leave in October 2009 and never returned to work. During the first 48 weeks of employment, Walker averaged about 24.15 hours per week and worked 1,378.17 hours during her entire tenure with JCP. Candelaria commenced work in July 2007 and terminated her employment with JCP in May or June 2012. During her first year of employment with JCP, she worked 1,221 hours.

**The Record**

All parties represent that the MTO Policy is uniformly applied to JCP's employees. JCP represents that the MTO Policy is reflected in detailed versions of the MTO Policy (referred to herein and in previous orders as "JMTO") that were available only online and made available to Plaintiffs. While Plaintiffs acknowledge that there is "functionally only one MTO," (ECF 193-1 at p.1:18), they assert that the MTO Policy applicable to Plaintiffs consists of a shorter, summary version of the MTO Policy (referred to herein and in previous orders as "EMTO"). Under either the JMTO or the EMTO, Plaintiffs represent that the MTO violates Labor Code §227.3. The court reviews the MTO in light of both the JMTO and EMTO.

**Legal Standards**

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt

1 as to the existence of any issue of material fact requires denial of the motion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the <u>moving party</u> bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992)).

**Labor Code §227.3**

As set forth in previous orders, a California employee has no entitlement to vacation benefits. <u>Owen v. Macy's, Inc.</u>, 175 Cal.App. 4th 462, 468 (2009) (Labor Code §227.3 does not require an employer to pay vacation benefits). However, once an employer offers vacation benefits, Labor Code §227.3 sets forth general rules to determine the vesting of vacation provisions. Labor Code §227.3 provides:

> § 227.3. Vested vacation wages; payment upon termination
>
> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.

In broad brush, when the employer does offer a vacation benefit to its employees, vacation pay "vests" when it is earned and, upon the employees's termination of employment, "all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served." Labor Code §227.3; <u>Suastez v. Plastic Dress-Up Co.</u>, 31 Cal.3d 774, 781 (1982). By clarifying that vacation benefits "vest" when earned, an employer, like Dress-Up Co., could not impose anniversary dates to prevent vacation time from vesting. <u>Id.</u> Upon termination, an employee must be paid the pro rata share of vested

vacation benefits.

Under the Labor Code, the employer retains the right to set the basic parameters of vacation benefits. The amount "of vacation pay an employee is entitled to be paid as wages is to be determined with reference to the employer's policy." Id. at 783. Such benefits include determining the amount of vacation days and a waiting period to qualify for vacation benefits. California state case law usually considers vacation pay to be compensation for past services if such benefits begin to accrue during the waiting period. See id. at 780; D.L.S.E. manual §15.1.3 (permitting "probationary periods during which no vacation pay is vested). In Owen v. Macy's, Inc., 175 Cal. App. 4th 462 (2009), the plaintiff worked as an associate for the Robinsons-May ("Robinsons") department store, which had then been recently acquired by Macy's. Id. at 465. The Robinsons' employee handbook provided that eligible associates earned and vested paid vacation from May 1 through April 30 of each year.[1] Id. The plaintiff was terminated on April 14, 2006, a few weeks before the first half of her vacation benefits would have vested for the year. Id. When ruling on behalf of the defendant Macy's, the court cited California Labor Code Section § 227.3 and concluded that "[b]y making it clear in advance that vacation is not part of a new employee's compensation, Robinsons does not run afoul of the rule that prohibits an employer from reducing an employee's wages for services after the service has been performed." Id. at 470.

Finally, the court highlights that the California Legislature instructs those involved in administrative disputes about vesting of vacation benefits to "apply the principles of equity and fairness." Labor Code §227.3. Further, as noted in Suastez, "[e]ven before the enactment of section 227.3, California Courts had applied the principles of equity and fairness to allow laid-off employees to recover pro rata

---

[1] Specifically, the Owen decision notes that Robinsons' employee handbook stated that "[a]ssociates who have completed at least six months of continuous service as of May 1 and who have worked at least 1000 hours during the prior vacation year will be eligible for paid vacation," and "[a]ll eligible associates earn and vest in paid vacation after they have completed six months of continuous employment. The vacation year is May 1 through April 30." Owen, 175 Cal. App. 4th at 465.

vacation benefits under certain circumstances." 31 Cal.3d at 783.  Thus, principles of equity and fairness provide context in which to view claims under §227.3.

**The Cross-Motions**

Plaintiffs contend that Cal. Labor Code §227.3 requires JCP to pay employees vacation benefits commencing on their hire date, without regard to a waiting period or minimum hours worked.  Plaintiffs broadly assert that JCP's MTO Policy operates as an impermissible forfeiture of vested vacation benefits.

The starting point in the analysis is Labor Code §227.3.  While an employer need not provide any vacation benefits, this provision provides that where an "employer policy" promises vacation benefits, those benefits become vested once conditions precedent, such as waiting periods or minimum hours worked, are satisfied.  Once an employer promises that vacation benefits will begin to be earned at a particular point in time, the employer may not impose conditions subsequent to forfeit those benefits once the benefits begin to accrue.

The MTO Policy, consistently and uniformly applied to all Plaintiffs, is contained in the Harris Declaration and attached exhibits.  Under the heading "ELIGIBILITY FOR MTO - NEWLY ELIGIBLE," the MTO Policy provides:

> **Part-Time Non-Management** – You become eligible and receive your first deposit on the first day of the month following 12 months of employment if you average 25 or more hours during the first 48 weeks of employment. You must qualify each year for MTO deposits.
>
> Example: If you are hired on October 30, you will be eligible and receive your first MTO deposit on November 1 of the following year, provided you averaged 25 hours or more per week in the 48-week period beginning October 30.

(ECF 59-2 at p.2). The MTO Policy also describes when the MTO hours are earned by the employee.

> The *corporation* determines your potential "Monthly MTO hours Deposit" when you first become eligible and then annually thereafter. If you are actively at work on the first day of each month, you will receive a deposit of MTO hours that you can earn during that month. The hours are advanced to you and are available for your immediate use as soon as they are deposited in your account.

(ECF 59-2 at p.3).

In other words, one becomes eligible (i.e., qualified to participate, Websters's II New College Dictionary 365 (1st Ed. 1995)) and receives the first vacation deposit after 12 months of employment if the employee averages 25 hours or more per week during the first 48 weeks of employment. Once the employee completes 12 months of service (through the first of the following month), and satisfies the minimum weekly average of hours worked, the employee is determined to qualify for benefits and begins to accrue vacation benefits. The MTO benefits are then deposited in the employee's account on the first of the month in anticipation (i.e., an advance payment of MTO benefits) of the work to be performed during that month. The MTO Policy also defines how MTO benefits are paid based upon the number of MTO service months - that is, the number of months during which the employee is determined to qualify for MTO benefits. The MTO Policy makes clear that vacation benefits are not a part of the employee's compensation package until after 12 months of employment when the employee is paid MTO benefits on the first of the month in anticipation of the amount of work performed by the employee during that month. Notably, no MTO benefit accrues or vests during the so-called 12 month waiting period. Vacation benefits begin to accrue, and are vested, on the first of the month following the 12-month waiting (or qualifying) period. (ECF 59-2). Vacation benefits are deposited into an employee's account on the first of the month as an advance on the vacation benefits to be earned that month.

Further, the language "become eligible and receive" is not reasonably susceptible to Plaintiffs' interpretation. Essentially, Plaintiffs argue that this language is synonymous with "eligible to receive," contending that the "MTO only tells employees when they are eligible to receive MTO benefits, not when MTO begins to accrue." (ECF 193-1 at p. 17:24-25). The court notes that there is an important and crucial distinction between "and," and "to." Use of the word "and" indicates that two separate events occur upon satisfying the prerequisites of the MTO Policy: (1) a PTNMA becomes eligible for MTO benefits and (2) the PTNMA receives a MTO deposit.

Plaintiffs use of "eligible to receive," in contrast, indicates that a there is only one requirement. The interpretation proposed by Plaintiffs suggests that one may become eligible at some earlier point in time, but receive the benefit at some other point in time. Plaintiffs impermissibly collapse the two requirements into a single inquiry. Notably, both <u>Suastez</u> and <u>Owen</u> instruct that once an employee becomes eligible for vacation benefits he or she is simultaneously entitled to payment for those vacation benefits. That is true whether, as in <u>Suastez</u>, the employer promised that the employee would earn one week paid vacation during the first year, or in <u>Owen</u> where the employer promised that the employee would be "eligible [to] earn and vest in paid vacation after they have completed six months of continuous employment." 175 Cal.App. 4th at 72. In both cases, when an employee becomes eligible for benefits, she is entitled to also receive those benefits.

The court construes this phrase to mean that the employee is determined to qualify for **and** receive MTO benefits at the same time, subject to satisfying the conditions precedent to receive MTO benefits. A PTNMA's compensation does not include any claim for MTO benefits until the conditions precedent are satisfied. In <u>Suastez</u>, the employer's vacation benefit provided that employees would earn between one and four weeks of paid vacation during each year of employment. The vacation policy provided that the employee would earn a one week vacation during the first year of employment. Under the policy, "an employee did not become eligible for a paid vacation under the company's policy until the anniversary date of his or her employment." 31 Cal.3d 774, 776. The California Supreme Court reasoned that, under the employer's plan, vacation benefits are a form of compensation that vests as it is earned and that a condition subsequent, like anniversary dates, resulted in the impermissible forfeiture of vested vacation pay. In other words, because the employer in <u>Suastez</u> promised that vacation benefits would accrue from the date of employment, at that point in time the employee was determined to qualify for vacation benefits and simultaneously entitled to receive a pro rata share of vacation benefits if employment

terminated prior to the one year anniversary. Any subsequent condition which would extinguish those benefits, effectively treated as wages, would have resulted in an impermissible forfeiture of wages. To avoid the forfeiture of earned vacation benefits, the California Supreme Court held that conditions subsequent, like anniversary dates, are not enforceable and could not extinguish an employee's vested right to vacation benefits.

In <u>Owen</u>, the California Supreme Court continued to focus on when an employee is determined to qualify for vacation benefits. The employee handbook vacation policy at issue in <u>Owen</u> provided,"[a]ll eligible associates earn and vest in paid vacation after they have completed six months of continuous employment." 175 Cal.App.4th at 465. Based upon this language, the California Court of Appeal concluded that an employee was not qualified to participate in the company's vacation benefit plan until after six months of employment. The vacation policy made clear that "he or she will not earn vacation pay as part of the compensation package for the first six months." <u>Id.</u> a t 470. Thus, in <u>Owen</u>, an employee was not determined to qualify for benefits until the expiration of the six month waiting period.

Plaintiffs' argument that vacation benefits are vested under the MTO Policy upon the date of hire is not supported by the MTO Policy or legal authority. In <u>Owen</u>, the Court of Appeal approved a six-month waiting period before new employees begin to earn vacation benefits. <u>Id.</u> at 465. In approving the six-month waiting period, the court noted that "[b]y making it clear in advance that vacation is not part of a new employee's compensation, [the employer did] not run afoul of the rule that prohibits an employer from reducing an employee's wages for services after the service has been performed." <u>Id.</u> at 470. Here, not only does the qualifying provision of the MTO Policy provide for a 12 month waiting period (to the first of the following month) before an employee begins to earn MTO benefits, but the example provided in the MTO Policy clarifies any doubt that an employee has no claim to vested benefits until the 12 month period is satisfied. Indeed, the California Department of Industrial

1  Relations' Divisions of Labor Standards Enforcement has made clear that "[a]n
2  employer may establish probationary periods where no vacation is earned and the
3  length of such period may be set by the employer.  The Division does not set any
4  specific limits on the length of probationary periods. . . ." Cal. Dept. Indus. Relations,
5  D.L.S.E. Opn. Letter No. 1987.03.16 (Mar. 16, 1987); see Owen,175 Cal.App. 4th 462;
6  D.L.S.E. Enforcement Policies and Interpretations Manual, Sections 15.1.2 and 15.1.3
7  ("Vacation plans which establish probation periods during which no vacation pay is
8  vested are permitted. If the employer has not promised vacation pay during a probation
9  period, no pro rata portion is due the employee whether or not he or she passes
10 probation.").

11       The court also concludes that the EMTO, as set forth in JCP's 2007 and 2008
12 benefits plan summary, (ECF 119-8 at p.13; ECF 119-22 at p.6), sets forth the same
13 fundamental condition that vacation benefits do not begin to be earned (i.e. vest) for
14 a period of 12 months, and are subject to a minimum of weekly employment hours.[2]

> **Part-Time Non-Management** – You become eligible and receive your first deposit on the first day of the month following 12 months of employment if you average 25 or more hours during the first 48 weeks of employment. You must qualify each year for MTO deposits.

18 (ECF 119-8 at p.13).  The court concludes that the 2007 and 2008 Summary of Benefits
19 is construed the same as the JTMO documents because of the language "eligible and
20 receive."  As with the JMTO, this provision provides that vacation benefits are not
21 considered compensation until completion of the 12 month period and satisfaction of
22 the minimum hour requirement.  There is no evidence that the policy, as described in
23 the Harris Declaration and attached exhibits, was not uniformly applied to all of JCP
24 employees.  While Plaintiffs repeatedly argue that JCP made misrepresentations or
25 omissions concerning the MTO Policy, the court highlights that this is not a

---

[2] While "Plaintiffs deny receiving JMTO documents," (ECF 193-1 at p. 6:17), Plaintiffs do not identify in their motion what documents, if any, they actually received and reviewed.

misrepresentation case. Plaintiffs do not allege any misrepresentation causes of action. Rather, the issue is whether the MTO Policy complies with Labor Code §227.3, as set forth in the Harris Declaration and related exhibits, has been uniformly and consistently applied. For the above stated reasons, the court concludes, while not a model of unassailable clarity, an objective reading of the MTO Policy fairly and reasonably puts the employee on notice that vesting of MTO benefits does not commence until after 12 months of employment and satisfaction of the minium hours of service requirement. The MTO Policy simply does not promise, imply, or suggest that vacation benefits are earned before the employee satisfies the waiting period and the minimum hour requirements. Put another way, this provision cannot be reasonably construed, as Plaintiffs argue, to read that a PTNMA begins to earn MTO benefits upon the first day of employment.

The court notes that there is a disconnect between Plaintiffs' claim for violation of Labor Code §227.3 and JCP's MTO Policy. The court highlights that Plaintiffs repeatedly argue that the court should evaluate the MTO Policy only in light of the EMTO, not the JMTO as reflected in the Harris Declaration. However, whether any vacation benefits are due depends upon the employer's vacation policies and "all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served." Labor Code §227.3. Here, there is no dispute that JCP applied its vacation policies uniformly and consistently to all employees as set forth in the Harris Declaration and provided sufficient notice to prospective employees of JCP's MTO Policy, as reflected in either the JMTO or EMTO. Plaintiffs provide no evidence to contradict the Harris Declaration. While Plaintiffs disavow that their claims are based on a misrepresentation theory, they repeatedly argue that the "accurate" MTO Policy is reflected in the EMTO documents, and not the Harris Declaration, even though the essential provisions are the same in both the EMTO and JMTO. (ECF 193-1 at p.3:6). Despite the uniformity of the MTO Policy actually applied, and the consistency of the

representations contained in the various iterations of the MTO Policy, Plaintiffs urge the court to apply a version of the MTO Policy not actually applied, but falsely represented as applying under the circumstances. In other words, Plaintiffs contend that the actual and uniformly applied MTO Policy misrepresents the "accurate" terms of JCP's vacation benefits policy as set forth in the 2007 and 2008 summary of employment benefits. This portion of Plaintiffs' claim sounds in tort, and does not establish a violation of Labor Code §227.3 because Plaintiffs were subject to the uniform and reasonable application of the MTO Policy.

The court rejects other arguments raised by Plaintiffs. In the main, Plaintiffs fail to identify evidence to support these arguments. For example, the court rejects Plaintiffs' contention that the MTO Policy for Management Associates ("MA") violates Labor Code §227.3. There is no evidence that any Plaintiff was subject to the MA MTO Policy. Plaintiffs also contend that the MTO Policy is an impermissible "service look-back vacation policy." The court rejects this argument because JCP's MTO Policy provides that once an employee is determined to qualify for vacation benefits, those benefits are vested and paid to the employee. The fact that JCP calculates the vacation benefit based upon the employee's weekly average hours from the previous year does not alter the crucial inquiry into when an employee is determined to qualify for vacation benefits. Use of the prior year's weekly average hours worked for calculation purposes was disclosed in the MTO Policy and is independent of, and does not alter, the determination of when an employee is determined to qualify for vacation benefits. Further, there is no evidence that any Plaintiff was harmed by this policy. The court also rejects Plaintiffs' contention that a one year waiting period before vacation benefits accrue is unfair and unenforceable as against public policy. Because an employer retains the discretion to not pay any benefits, a 12 month waiting period before a part-time employee is determined to qualify for vacation benefits does not offend California state law. The court also rejects Plaintiffs' contention that the failure of JCP to reconcile the actual hours worked during the MTO service month to the

vacation benefit actually received (based upon the previous year's weekly average), somehow invalidates the MTO Policy under Cal. Labor Code §227.3. As the vacation benefit calculation is based upon the average hours worked during the prior year, Plaintiffs conclude that the number of hours actually worked during the MTO service month is likely more or less than the previous year and, therefore, the amount of MTO benefits received is either "over-paid, paid the correct amount or underpaid." (ECF 193-1 at p.13:14). Plaintiffs do not identify any evidence to support their claim that they were harmed by this policy. Indeed, a qualified employee receives a vacation deposit advance on the first of the month. If the employee terminates his employment anytime between the first and the penultimate day of the month, the employee receives a windfall because the vacation deposit is made in advance of the employee's continued employment through the month. Even if the employee terminates his or her employment on the last day of the month, the employee receives complete compensation for the time worked (assuming the prior weekly average is representative of the hours worked during the MTO service month). Regardless, JCP has adequately informed employees about the manner of calculating MTO and Plaintiffs fail to submit any evidence that they were in any way harmed by the "failure to reconcile" vacation benefits. Finally, the court rejects Plaintiffs' argument that a cherry picked statement from a chart summarizing JCP's employee benefits, "Available immediately," applies to modify the MTO Policy specifically identified in the Your 2008 New Hire Guide to Benefits. (ECF 199-22 at p.3).

In sum, the court finds that the MTO Policy sets forth a valid 12 month waiting period, and a minimum employment hours requirement, before the employee is determined to qualify for vacation benefits.

The court also sets a case management conference for April 25, 2016 at 9:30 a.m. Five court days prior to the hearing, the parties shall file and serve a joint case

/ / /

/ / /

management plan for resolving all remaining issues. The parties should also be prepared to set the final Pretrial Conference and Trial dates for any outstanding issues.

**IT IS SO ORDERED.**

DATED: March 30, 2016

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties